UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
COURT FILE NO.: 19-cv-181

| | |
|---|---|
| Quinton Carlson, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br>v.<br><br>Ford Motor Credit Company, LLC and Patrick K. Willis Company, Inc. d/b/a/ SB Investigations,<br><br>　　　　　Defendants. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Quinton Carlson (hereinafter "Plaintiff") brings this consumer class action on behalf of himself and other Wisconsin consumers similarly situated against Ford Motor Credit Company, LLC (hereinafter "Defendant FMCC") for its violations of Wis. Stat. § 409.607 and against Defendant Patrick K. Willis Company, Inc. d/b/a SB Investigations (hereinafter "Defendant PKW") (collectively hereinafter "Defendants") for its violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("FDCPA").

**PARTIES**

1. Plaintiff is a natural person who resides in the city of Balsam Lake, county of Polk, state of Wisconsin.

2. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and an "account debtor" as defined by Wis. Stat. § 409.102(1)(am).

1

3. Defendant FMCC is a limited liability company organized under the laws of the state of Delaware; is authorized to do business in the state of Wisconsin, and regularly conducts business in said State, and has its headquarters located at Tax Department Ford WHQ Room 612, One American Road, Dearborn, MI 48126.

4. Defendant FMCC has designated CT Corporation System as its agent, located at 301 S. Bedford Street, Suite 1, Madison, Wisconsin 53703.

5. Defendant FMCC is a "secured party" as defined by Wis. Stat. § 409.102(1)(rs).

6. Defendant PKW is a collections company incorporated under the laws of California and, upon information and belief, regularly conducts business within the state of Wisconsin, and has a principal place of business located at 5118 Robert J. Mathews Parkway, El Dorado Hills, California 95762.

7. Defendant PKW is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it seeks to collect debts and enforce security agreements allegedly owed or due another.

## JURISDICTION AND VENUE

8. Jurisdiction of this Court is proper pursuant to 15 U.S.C. § 1692, *et seq.*, 28 U.S.C. §§ 1331, and 1367 for pendent state law claims.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants reside in this District and a substantial part of the acts or omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

### Inception of Plaintiff's Loan and Subsequent Payment History

10. On December 31, 2015, Plaintiff went to AutoNation Ford (hereinafter the "Dealership"), located in White Bear Lake, Minnesota, to purchase a 2012 Ford F-150 (hereinafter the "Vehicle").

11. Plaintiff entered into a Retail Installment Contract and Security Agreement (hereinafter "RICSA") with the Dealership, acting as both seller and creditor.

12. Pursuant to the terms of the RICSA, Plaintiff was to repay the Dealership the entire amount financed through regular, monthly installments and the Dealership was granted a security interest in the Vehicle to secure repayment.

13. The RICSA was contemporaneously assigned to Defendant FMCC.

14. Plaintiff purchased the Vehicle for personal, family, or household purposes.

15. The amount financed to purchase the Vehicle is, therefore, a "debt" as defined by 15 U.S.C. § 1692a(5).

16. From the inception of the loan through July of 2016 Plaintiff made his payments to Defendant FMCC in accordance with, or largely in accordance with, the RICSA.

17. Plaintiff fell behind on his payments to Defendant FMCC beginning in August of 2016.

18. Sometime thereafter, Defendant FMCC retained Defendant PKS to collect Plaintiff's Vehicle by self-help repossession or other means.

19. At all times herein relevant, Defendant PKS was acting as Defendant FMCC's agent and was acting within the course and scope of that agency.

**Applicable Law**

**The FDCPA and Wisconsin Law**

20. In recognition of the fact that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" and the acute damage caused by such practices, Congress enacted the FDCPA. *See,* 15 U.S.C. § 1692(a).

21. The FDCPA proscribes specific and general practices deemed by Congress to be abusive, deceptive, or unfair.

22. Section 1692b(2) provides that "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt. 15 U.S.C. § 1692b(2).

23. Section 1692c(b) provides that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer" except in specific circumstances not present in this case. 15 U.S.C. § 1692c(b).

24. Section 1692d provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

25. Section 1692e provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

26. Section 1692e(5) specifically prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

27. Section 1692f provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

28. Pursuant to Wisconsin law, if a secured party "undertakes to collect from or enforce an obligation from an account debtor," it must do so in a "commercially reasonable manner." Wis. Stat. § 409.607(3).

29. If a secured party undertakes to collect from or enforce an obligation for an account debtor and fails to do so in a commercially reasonable manner, it shall be liable for the losses caused, pursuant to Wis. Stat. § 409.625.

**Defendant PKW's Insidious Debt Collection Practices**

30. On or about January 31, 2019, at or about 12:29 p.m., Plaintiff received a voicemail from Defendant PKW's agent, an individual identifying himself as "Shawn Michaels", claiming he was working for a company named "SB Investigations," from the telephone number 1-855-844-2570, and stating, in relevant part, that he needed to speak with Plaintiff and make arrangements to pick up Plaintiff's Vehicle.

31. That same day, at or about 12:44 p.m. Plaintiff called Defendant PKW's agent back and engaged in a conversation with him.

32. Defendant PKW's agent stated that Plaintiff needed "to do the right thing" and surrender his Vehicle.

33. Defendant PKW's agent asked Plaintiff how he could "convince" Plaintiff "to do the right thing."

34. Defendant PKW's agent then asked Plaintiff, "Do you think Alexandra [Plaintiff's daughter] or Noah [Plaintiff's brother] might help me find the truck?"

35. Defendant PKW's agent asked Plaintiff if he thought Plaintiff's son, Anthony was aware that Plaintiff was behind on payments to Defendant FMCC.

36. Defendant PKW's agent's conduct, his threat to disclose details of Plaintiff's alleged debt to Defendant FMCC to Plaintiff's family members, is in violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(5) and 1692f.

37. Plaintiff terminated the telephone call shortly thereafter.

38. That same day, at or about 1:00 p.m., Plaintiff's son Anthony received a telephone call from the telephone number 1-855-844-2570.

39. Anthony answered the telephone call and Defendant PKW's agent identified himself as "Shawn Michaels" and asked Anthony if he knew a "Quinton Carlson" or a "Lisa Carlson."

40. Unnerved by Defendant PKW's agent's questions and demeanor, Anthony responded "No."

41. Defendant PKW's agent responded, "That's too bad. I was going to offer you a cash reward for any information on Quinton Carlson's whereabouts or any information that would help me repossess the truck."

42. Defendant PKW's agent continued, "I will try reaching out to other family members."

43. Defendant PKW's agent's conduct, disclosing details of Plaintiff's alleged debt to Defendant FMCC to Anthony and offering him compensation to aid in his efforts to repossess Plaintiff's Vehicle, is in violation of 15 U.S.C. §§ 1692b(2), 1692c(b), and 1692f.

44. Defendant FMCC may be held accountable for Defendant PKW's conduct for Defendant FMCC has a nondelegable duty to ensure that collection efforts done at its behest are in accordance with the law. *See, e.g., Walser Leasing, Inc. v. Simonson,* 355 N.W.2d 545, 546 (Wis. Ct. App. 1984).

45. Defendant FMCC's failure to do so is "commercially unreasonable" and in violation of Wis. Stat. § 409.607(3).

46. Anthony terminated the telephone call shortly thereafter.

47. Anthony immediately informed Plaintiff of what had transpired.

48. Plaintiff then called Defendant FMCC at the telephone number 877-231-8641.

49. Plaintiff was connected with Defendant FMCC's agent, Valerie.

50. Plaintiff informed Valerie of what had transpired—that Defendant PKW's agent, specifically "Shawn Micheals" called him, threatened to disclose details of Plaintiff's alleged debt to Defendant FMCC to various family members, did, in fact, disclose such to Plaintiff's son, Anthony, and, moreover, offered Anthony compensation in exchange for information regarding either Plaintiff's whereabouts or information that would lead to the repossession of Plaintiff's Vehicle.

51. In response, Valerie stated, "Yeah, it's a finder's fee. There's nothing wrong with that."

52. Defendant FMCC's complicity in Defendant PKW's egregious debt collection practices is commercially unreasonable and in violation of Wis. Stat. § 409.607(3).

53. Plaintiff was in disbelief.

54. Before terminating the telephone call, Plaintiff asked Valerie to have another of Defendant FMCC's agents, one who had actually worked with his account, to contact Plaintiff.

55. Though Valerie confirmed that an agent would contact Plaintiff, that never transpired.

56. Upon information and belief, Defendant PKW regularly engages in such conduct and Defendant FMCC regularly condones and authorizes such illegal collection conduct.

57. As a result of Defendants' violations of the FDCPA and Wisconsin law, Plaintiff suffered actual damages in the form of humiliation, embarrassment, anger, stress, frustration and other types of emotional distress and mental anguish.

## Class Action Allegations

58. Plaintiff brings this Complaint on behalf of himself and all other Wisconsin consumers similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

59. The first class that Plaintiff seeks to certify, hereinafter the "FDCPA Class," is defined as follows:

> *All Wisconsin consumers who, within one (1) year of the filing of this Complaint, were subjected to Defendant PKW's insidious debt collection practices as described herein.*

60. The FDCPA class shall be subject to the following exclusions, the above criterion notwithstanding: (1) Counsel for Plaintiff and the FDCPA Class; (2) Counsel for Defendants; and (3) the assigned Judge, Magistrate Judge, and their clerks and staff.

61. The second class that Plaintiff seeks to certify, hereinafter the "Commercially Unreasonable Practices Class," is defined as follows:

    *All Wisconsin consumers who, within three (3) years of the filing of this Complaint, were subjected to Defendant FMCC's commercially unreasonable practices as described herein.*

62. The Commercially Unreasonable Practices Class shall be subject to the following exclusions, the above criterion notwithstanding: (1) Counsel for Plaintiff and the Commercially Unreasonable Practices Class; (2) Counsel for Defendants; and (3) the assigned Judge, Magistrate Judge, and their clerks and staff.

63. This action may properly be maintained as a class action for the FDCPA Class and the Commercially Unreasonable Practices Act Class each satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23(a)-(b) of the Federal Rules of Civil Procedure for certification.

**Numerosity**

64. Defendant FMCC represents that it "is a leading automotive financial services company," providing such services "around the world." *See,* www.linkedin.com/company/ford-motor-credit-compnay (last access March 4, 2019).

65. Defendant PKW represents that it has hundreds of repossession agents working on its behalf to provide "complete repossession portfolio management solutions [to] major financial institutions." *See,* www.americanrecoveryservice.com/about (last accessed March 4, 2019).

66. On or about January 31, 2019, Defendant PKW's agent threatened to disclose the details of Plaintiff's alleged debt to Defendant FMCC to Plaintiff's family members, offered compensation to Plaintiff's son, Anthony in exchange for information sought, and actually disclosed the details of Plaintiff's alleged debt to Defendant FMCC to Plaintiff's son.

67. Such conduct violates numerous sections of the FDCPA.

68. Defendant FMCC may be held accountable for Defendant PKW's conduct for Defendant FMCC has a nondelegable duty to ensure that collection efforts done at its behest are in accordance with the law.

69. Defendant FMCC's failure to do so is "commercially unreasonable" and in violation of Wis. Stat. § 409.607(3).

70. Moreover, Defendant FMCC's complicity in Defendant PKW's egregious debt collection practices is commercially unreasonable and in violation of Wis. Stat. § 409.607(3).

71. It is plausible that Defendants subjected a large number of Wisconsin consumers to the same or similar conduct.

72. Therefore, it is plausible that joinder of all those Wisconsin consumers into a single lawsuit would be impracticable.

73. The exact number of class members is unknown at this time but, upon information and belief, exceeds 50.

74. However, the exact number of class members, as well as their identities, is readily ascertainable through appropriate discovery, including, but not limited to, Defendants' business records.

## Commonality

75. All members of the FDCPA Class and the Commercially Unreasonable Practices Class have had their rights violated by Defendants in the same manner.

76. Common questions of law and fact exist as to the FDCPA Class and the Commercially Unreasonable Practices Class such as:

   a. Whether Defendants regularly instruct their agents to threaten to disclose the details of a debtor's alleged debt to a debtor's family members or others;

   b. Whether Defendants regularly instruct their agents to offer compensation in exchange for information that will aid in the recovery of collateral;

   c. Whether Defendants regularly instruct their agents to actually disclose the details of a debtor's alleged debt to a debtor's family members or others;

   d. Whether Defendants otherwise authorized such conduct as described herein;

   e. Whether Defendants' conduct as described herein is in violation of the FDCPA and/or Wisconsin law.

77. Common evidence will be used to resolve the claims asserted by the FDCPA Class and the Commercially Unreasonable Practices Class, such as:

      a. Defendants' policies and procedures regarding the means and manner of collection and, specifically, instructions given to agents regarding disclosure of a debtor's information and/or the offering of compensation in exchange for information.

78. These common questions of law and fact predominate over any questions affecting individual class members and the answers to these common questions of law and fact will advance the adjudication of the litigation as to all class members.

### Typicality

79. Plaintiff's claims are typical of the claims brought by the FDCPA Class and the Commercially Unreasonable Practices Class.

80. Plaintiff's claims and the claims brought by the FDCPA Class and the Commercially Unreasonable Practices Class arise from Defendants' same conduct.

81. Accordingly, if brought and adjudicated individually, the claims would require proof of the same substantive facts.

82. Plaintiff has the same claim to statutory relief and has suffered the same injuries as the members of the FDCPA Class and the Commercially Unreasonable Practices Class.

83. Any defenses that Defendants may have regarding liability or quantum of damages with respect to Plaintiff's claims would generally be applicable to the members of the FDCPA Class and the Commercially Unreasonable Practices Class.

### Adequacy

84. Plaintiff brings this lawsuit with the intention of stopping Defendants' unlawful practices and to recover for all Wisconsin consumers affected.

85. Plaintiff will fairly and adequately protect the interests of all members of the FDCPA Class and the Commercially Unreasonable Practices Class.

86. Plaintiff's counsel, the Consumer Justice Center, P.A., practices exclusively in the area of consumer rights litigation, having brought both numerous individual and class actions in United States District Courts around the country.

87. Plaintiff and his counsel will continue to vigorously advocate on behalf of the members of the FDCPA Class and the Commercially Unreasonable Practices Class.

88. Neither Plaintiff nor his counsel have an interest adverse to or in conflict with the interests of the members of the FDCPA Class or the Commercially Unreasonable Practices Class.

89. Plaintiff and his counsel are committed to expending the time, energy, and resources necessary to successfully adjudicate this action on behalf of the FDCPA Class and the Commercially Unreasonable Practices Class

### Risk of Inconsistent or Dispositive Adjudications

90. Certification is appropriate pursuant to Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure because the prosecution of separate actions for each of the individual class members creates a risk of inconsistent or varying adjudication which would establish differing standards for Defendants and others engaged in vehicle financing and/or the enforcement of security interests.

91. Certification is appropriate pursuant to Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure because the prosecution of separate actions by individual class members would, as a practical matter, be dispositive of the interests of all class members or could substantially impair or impeded their ability to protect their interests.

92. Certification is appropriate pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted or refused to act on grounds generally applicable to the members of the FDCPA Class and the Commercially Unreasonable Practices Class.

### Superiority

93. Certification is appropriate pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure as a class action is superior to all other available methods to fairly and efficiently adjudicate this action.

94. Individual claims by the class members are wholly impracticable as the costs of such would likely exceed what any individual class member has at stake.

95. Thus, the members of the FDCPA Class and the Commercially Unreasonable Practices Class have little interest in prosecuting any litigation given the small amounts at stake relative to the cost, risk, delay, and uncertainly of recovery.

96. Concentrated litigation would permit similarly situated persons to prosecute their common claims efficiently, without unnecessary duplication of effort and expense and would, therefore, promote judicial economy.

97. The members of the FDCPA Class and the Commercially Unreasonable Practices Class had their rights violated by Defendants in the same manner.

98. Upon information and belief, few members of the FDCPA Class or the Commercially Unreasonable Practices Class are aware that Defendants' actions and inactions were wrongful.

99. The class notice mechanism provides an opportunity for members of the FDCPA Class and the Commercially Unreasonable Practices Class to learn of their rights and seek redress.

## JURY TRIAL DEMANDED

100. Plaintiff is entitled to, and hereby demands, a trial by jury. U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## CLASS CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT— 15 U.S.C. § 1692 *et seq.*

### Against Defendant PKW

101. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

102. On or about January 31, 2019, Defendant PKW threatened to disclose details of Plaintiff's alleged debt to Defendant FMCC to Plaintiff's family members, in violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(5) and 1692f.

103. Shortly thereafter, Defendant PKW offered Plaintiff's son, Anthony compensation in exchange for information to aid in efforts to repossess Plaintiff's Vehicle and actually disclosed details of Plaintiff's alleged debt to Defendant FMCC, in violation of 15 U.S.C. §§ 1692b(2), 1692c(b), and 1692f.

104. Upon information and belief, Defendant PKW regularly engages in such conduct and, therefore, subjected members of the FDCPA Class to such conduct.

105. Plaintiff and the members of the FDCPA Class were damaged by Defendant PKW's conduct.

106. Accordingly, Plaintiff and members of the FDCPA Class are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT II.

## VIOLATIONS OF WIS. STAT. § 409.607(3)

### Against Defendant FMCC

107. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

108. On or about January 31, 2019, Defendant PKW threatened to disclose details of Plaintiff's alleged debt to Defendant FMCC to Plaintiff's family members, in violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(5) and 1692f.

109. Shortly thereafter, Defendant PKW offered Plaintiff's son, Anthony compensation in exchange for information to aid in efforts to repossess Plaintiff's Vehicle and

actually disclosed details of Plaintiff's alleged debt to Defendant FMCC, in violation of 15 U.S.C. §§ 1692b(2), 1692c(b), and 1692f.

110. Upon information and belief, Defendant PKW regularly engages in such conduct.

111. Defendant FMCC may be held fully and completely liable for the conduct of Defendant PKW for it has a non-delegable duty to ensure that collection efforts engaged in on its behest and on its behalf are lawful.

112. Defendant FMCC's failure to do so is "commercially unreasonable" and in violation of Wis. Stat. § 409.607(3).

113. Defendant FMCC's complicity in Defendant PKW's egregious debt collection practices is commercially unreasonable and in violation of Wis. Stat. § 409.607(3).

114. Moreover, despite being actually aware of Defendant PKW's egregious debt collection practices, Defendant FMCC continued to retain Defendant PKW to act on its behalf, which is "commercially unreasonable" and in violation of Wis. Stat. § 409.607(3).

115. Upon information and belief, Defendant FMCC regularly engages in such conduct and, therefore, subjected members of the Commercially Unreasonable Practices Class to such conduct.

116. Accordingly, Plaintiff and the members of the Commercially Unreasonable Practices Class are entitled to recover from Defendant FMCC the resultant damages, to be determined at trial, pursuant to Wis. Stat. § 409.625.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that relief be granted as follows:

- certifying the FDCPA Class and the Commercially Unreasonable Practices Class as set forth herein;
- awarding Plaintiff actual and statutory damages against Defendant PKW for its violations of the FDCPA, pursuant to 15 U.S.C. § 1692k;
- awarding Plaintiff reasonable attorney's fees and costs against Defendant PKW, pursuant to 15 U.S.C. § 1692k;
- awarding members of the FDCPA Class actual and statutory damages, as well as reasonable attorneys' fees and costs, against Defendant PKW, pursuant to 15 U.S.C. § 1692k;
- awarding Plaintiff and members of the Commercially Unreasonable Practices Class their resultant damages, pursuant to Wis. Stat. § 409.625; and
- awarding Plaintiff, members of the FDCPA Class, and members of the Commercially Unreasonable Practices Class such other and further relief as this Court may deem just and proper.

Dated this 8th day of March 2019.

By: s/Thomas J. Lyons Jr.

Thomas J. Lyons, Jr., Esq.
MN Attorney I.D. #:  0249646
Katelyn R. Cartier, Esq.
WI Attorney I.D. #: 1099959
**CONSUMER JUSTICE CENTER, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:   (651) 704-0907
Email: tommy@consumerjusticecenter.com
Email: kcartier@consumerjusticecenter.com

# VERIFICATION OF CLASS ACTION COMPLAINT AND CERTIFICATION BY PLAINTIFF

STATE OF WISCONSIN              )
                                ) ss
COUNTY OF POLK                  )

I, Quinton Carlson, having first been duly sworn and upon oath, states as follows:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Class Action Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Class Action Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Class Action Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

s/Quinton Carlson_____
Quinton Carlson

Subscribed and sworn to before me
this 7th day of March 2019.


s/Jessica A. Fox_____
Notary Public