**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

| | |
|---|---|
| Quinton Carlson, on behalf of himself and all others similarly situated, | Court File No. 19-cv-181-jdp |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PATRICK K. WILLIS COMPANY, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT** |
| v. | |
| Patrick K. Willis Company, Inc. and Sean Sasville, | |
| Defendants. | |

---

**INTRODUCTION**

In a recorded phone call, Plaintiff Quinton Carlson ("Carlson") stated his intention to "sue the shit out of" the company that called him attempting to locate his truck. Carlson and his counsel have now had two opportunities to plead a cognizable claim, but have failed to do so. The Amended Complaint, just like the original Complaint, is both factually and legally meritless.

Under longstanding precedent in this district and the Seventh Circuit, as well as a recent Supreme Court decision, companies that enforce security interests like Patrick K. Willis Company, Inc. ("PKW") are not "debt collectors" that may be sued under any of the FDCPA sections that Carlson cites. As a result, the entire claim against PKW fails as a matter of law.

Notably, even if PKW *was* a debt collector, the Amended Complaint would still fail because none of PKW's actions have been inconsistent with the FDCPA. The Amended Complaint devotes numerous paragraphs to alleging that PKW's representative misrepresented the name of his employer as "SB Investigations" and asserts that a class of injured consumers should be permitted to pursue claims as a result. But "SB Investigations" is a registered name under which PKW publicly filed to do business more than five years ago.

Again and again, Carlson and his counsel plead allegations that are factually unsupportable or which describe conduct that is not actually inconsistent with the law. And although they have now removed the false quotations of what was supposedly said during the phone calls that had been pleaded in their original Complaint, they continue to make allegations that are disproven by the recordings and transcriptions of those phone calls.

Despite two attempts, Carlson and his counsel cannot articulate a claim that is legally coherent or factually supportable. This case should not be permitted to proceed forward. It should be dismissed with prejudice now.

## FACTUAL BACKGROUND

Carlson lives in Balsam Lake, Wisconsin. (Am. Compl. ¶ 1.) He purchased, but ceased making payments on, a Ford F-150 pickup truck. (Am. Compl. ¶¶ 11, 18.)

### PKW's Business

PKW and Ford Motor Credit Company LLC ("FMCC") are parties to a "Locate Company Agreement" certain portions of which are referenced in the Amended Complaint. (Am. Compl. ¶¶ 6, 35.) A copy of the Locate Company Agreement is attached as Exhibit 1 to the Declaration of Aaron Mills Scott ("Scott Decl.").

The Locate Company Agreement notes that, from time to time, FMCC needs assistance to "locate and coordinate repossession" of vehicles. (Scott Decl Ex. 1 at 1.) The Locate Company Agreement requires PKW to "provide location information on the Vehicle to Ford Credit, and, unless otherwise instructed by Ford Credit, initiate the repossession request and monitor the repossession until the Vehicle is secured . . ." (*Id.*) The Locate Company Agreement specifically identifies both what PKW is required to do and what roles it does not have:

>  (b) The only authorized communications by Contractor with Customers are communications for the sole purpose of obtaining information on the location of the Vehicle. Contractor will not in any way attempt to collect any debt or enforce any Customer obligation, accept payments on behalf of Ford Credit, or coordinate arrangements for Customer to pay Ford Credit.

(Scott Decl. Ex. 1 at 2.)

### The Phone Calls With Carlson and his Son

On January 31, 2019, Carlson called and spoke with a PKW representative after receiving a voicemail. (Am. Compl. ¶¶ 32, 37.) A transcript of that phone call is filed as Exhibit A to the Declaration of Kathleen Peterson ("Peterson Decl.") and a recording is provided in Exhibit C. Later that same day, the PKW representative spoke with Carlson's son, Anthony. (Am. Compl. ¶ 45; Peterson Decl. Exs. B, C.) The claims asserted by Carlson arise from these phone calls.

Carlson alleges that during the phone calls, PKW's representative misrepresented the identity of his employer by using the name "SB Investigations." (Am. Compl. ¶ 34.) This allegation is demonstrably false. "SB Investigations" is a registered name under which PKW has been on file doing business for more than five years. (Scott. Decl. ¶ 3, Ex. 2.)

Carlson also alleges that PKW's representative acted wrongfully because he used the name "Sean Michaels" instead of his real name "Sean Sasville." (Am. Compl. ¶ 33.) The Amended Complaint does not allege that anyone suffered any injury as a result of the last name used by PKW's representative. Under case law and Federal Trade Commission guidance, the widespread practice among phone representatives of using pseudonyms as "desk names" is not unlawful.

Carlson further alleges that PKW violated the FDCPA because its representative made a "thinly veiled threat to disclose the existence of and possible details concerning Plaintiff's alleged debt to FMCC to Plaintiff's family members." (Am. Compl. ¶ 43.) The recorded and

3

transcribed phone call demonstrates that PKW's representative brought up family members only after Carlson claimed, "The vehicle is not even in the country," and then refused to answer the question, "[W]here'd did you ship it off to?" (Peterson Decl. Ex. A.) In response, Carlson refused to provide a location, stating, "You're not getting it. Okay?" (Peterson Decl. Ex. A.) PKW's representative expressed hope that family members could inform him where the truck was located and said nothing about revealing Carlson's failure to make payments, or any other detail of his indebtedness, to third parties. (Peterson Decl. Ex. A.)

Carlson alleges that PKW violated the FDCPA by "discussing the existence of Plaintiff's alleged debt to FMCC to Anthony and offering him compensation to assist in his efforts to aid in the collection of the debt and/or to repossess Plaintiff's Vehicle." (Am. Compl. ¶ 51.) In addition to being incoherently phrased, this allegation is wholly false. When he answered the phone, Anthony denied even knowing who Carlson (his father) was. (Peterson Decl. Ex. B.) The PKW representative said absolutely nothing about "repossession" or any debt owed, instead responding, "Okay. No worries because I was definitely going to see if you knew them and offer you some money if you could help me locate a vehicle." (Peterson Decl. Ex. B.)

The Complaint acknowledges that the phone call with Anthony occurred after the phone call with Carlson. (Am. Compl. ¶¶ 32, 37, 45.) PKW's representative called Anthony only after Carlson twice provided permission for third parties to be contacted, stating, "Yeah, do that. Do that. You know, just be real careful about how you do it. . . . Hey, you know what, give them a call. Find out. Just be careful what you say. Cause I'll sue the shit of you, too." (Peterson Decl. Ex. A.)

In sum, the recorded phone calls demonstrate that despite the false allegations in the Amended Complaint, PKW's representative never threatened to reveal Carlson's indebtedness to

4

any third party, that he contacted the third party only after receiving consent to doing so, and that he revealed nothing about Carlson's indebtedness to Carlson's son. (Peterson Decl. Exs. A, B.) The PKW representative was attempting simply to "locate a vehicle" which was exactly the service that PKW agreed to perform for FMCC. (Peterson Decl. Exs. A, B; Scott Decl. Ex. 1.)

## **ARGUMENT**

I. **LEGAL STANDARD**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must contain sufficient factual matter to plausibly suggest the pleader is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

A complaint must include more than just conclusory allegations to survive a Rule 12(b)(6) motion to dismiss. *Id.* Although a district court must accept as true all well-pleaded factual allegations in the complaint, legal conclusions are not entitled to the assumption of truth. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Because the Amended Complaint heavily references the January 31, 2019 phone calls and the Locate Company Agreement between PKW and FMCC, the recordings and transcripts of those phone calls and the written Locate Company Agreement are embraced by the proceedings and may properly be considered on a Rule 12 motion. *Wilson v. Northland Coll.*, No. 17-CV-337-SLC, 2018 WL 341749, at *1 n.1 (W.D. Wis. Jan. 9, 2018) ("In support of its motion to dismiss, Northland has submitted a number of documents to which Wilson refers in the Amended Complaint. Under the incorporation-by-reference doctrine, a defendant may submit a document to which the plaintiff refers in his complaint without converting a motion to dismiss into a motion for summary judgment."); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("In effect, the incorporation-by-reference doctrine provides that if a

plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.") (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).)

Additionally, public records may be considered on a Rule 12(b)(6) motion without converting the motion to one for summary judgment. *Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994).

## II. PKW IS NOT A "DEBT COLLECTOR" AND IS NOT SUBJECT TO FDCPA LIABILITY UNDER THE STATUTES REFERENCED IN THE COMPLAINT.

Under clear precedent in this district, in the Seventh Circuit Court of Appeals, and the United States Supreme Court, PKW is not a "debt collector." It assists the holders of security interests to repossess vehicles, but it does not collect debts. It is subject to being sued under only one provision of the FDCPA—15 U.S.C. § 1692f(6)—that is not relevant here. Because Carlson does not and cannot assert a claim under that statute, the entire Amended Complaint fails as a matter of law and must be dismissed.

Carlson specifically alleges that PKW has violated 15 U.S.C. §§ 1692b(2), 1692c(b), 1692d, 1692d(6), 1692e, 1692e(5), 1692e(10), 1692e(14) and 1692f. (Am. Compl. ¶¶ 100–02.) Every claimed violation fails as a matter of law because PKW is not a debt collector.

### A. PKW Does Not Collect Debts But Instead Assists With Enforcing Security Interests.

The Locate Company Agreement describes the role that PKW plays. It "provide[s] location information" and "initiate[s] the repossession" but it cannot receive payments or attempt to collect any debt. (Scott Decl. Ex. 1 at 1–2.)

6

The phone calls with Carlson and his son Anthony reflect PKW performing exactly the services that it contracted to provide. PKW's representative never made any attempt to collect payment from Carlson and instead focused entirely on trying to locate the truck. (Peterson Decl. Exs. A, B.)

**B.     Companies That Enforce Security Interests Or Take Actions Incidental To The Enforcement Of Security Interests Are Not Debt Collectors.**

The plain language of the FDCPA, as well as established case law interpreting it, make a clear distinction between those companies that collect debts and those that pursue repossession of collateral. The FDCPA defines debt collectors as those "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6). That same definition quickly clarifies that companies that work to enforce security interests are *not* debt collectors under the general definition, but instead are regulated by only one section of the statute. "*For the purpose of section 1692f(6) of this title*, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id.* (emphasis added.)

Consistent with this language distinguishing the two types of companies, longstanding authority in this district and in the Seventh Circuit provides that companies that repossess collateral like cars—as opposed to those that call consumers asking for debts to be repaid—are not "debt collectors" under the general definition provided by the FDCPA. In *Paulsen v. Blommer Peterman, S.C.*, No. 14-CV-106-WMC, 2015 WL 1486546, at *5 (W.D. Wis. Mar. 31, 2015), the court recognized that, "the only limit in § 1692a(6) is to 'people who engage in the business of repossessing property, whose business does not primarily involve communicating with debtors in an effort to secure payment of debts,' for example repossession agencies and

7

their agents." *See also Dallman v. Felt & Lukes*, LLC, No. 12-CV-765-WMC, 2013 WL 6628996, at *4 (W.D. Wis. Dec. 17, 2013) ("Defendants are correct that courts generally distinguish between debt collection and the enforcement of security interests, because the latter is not regulated by the FDCPA.").

The Seventh Circuit has similarly long recognized that entities like PKW, which are involved only in the enforcement of security interests, not in collection of debts, are subject only to the so-called "wrongful repossession" statute, 15 U.S.C. § 1692(f)(6), not to the rest of the FDCPA. *Nadalin v. Auto. Recovery Bureau, Inc.*, 169 F.3d 1084, 1085 (7th Cir. 1999) ("The Act regulates the practices of 'debt collectors,' a term that is defined as excluding repossessors and other enforcers of security interests, 15 U.S.C. § 1692a(6), except that a repossessor may not take or threaten to take nonjudicial action to dispossess a person of property if 'there is no present right to possession of the property claimed as collateral through an enforceable security interest.'").

Although this case law was established long before the commencement of this litigation, it was strengthened and standardized across the country on March 20, 2019, when a unanimous United States Supreme Court issued its decision in *Obduskey v. McCarthy & Holthus LLP*. That decision "place[s] those whose 'principal purpose . . . is the enforcement of security interests' outside the scope of the primary 'debt collector' definition" and confirms the approach that the Seventh Circuit has followed for 20 years is correct; entities that are engaged in the enforcement of security interests are not "debt collectors" for purposes of the FDCPA except for the limited purposes of 15 U.S.C. § 1692f(6). *Obduskey v. McCarthy & Holthus LLP*, 139 S.Ct. 1029, 1031 (2019).

The Amended Complaint does not allege that Carlson's vehicle has been repossessed, wrongfully or otherwise, nor does it allege that anyone has attempted to enforce a security interest despite having no present right to do so. To the contrary, it acknowledges that Carlson long ago stopped making payments on the vehicle. (Am. Compl. ¶ 18.) 15 U.S.C. § 1692f(6)—the only provision of the FDCPA that could potentially be applicable to a company like PKW that does not collect debts but instead enforces security interests—is not applicable here. As a result, longstanding authority dictates that the FDCPA claim pleaded against PKW fails as a matter of law.

### C.     Skip Tracers Are Specifically Not Debt Collectors.

In light of the precedent holding that companies that merely enforce security interests are not debt collectors, it is unsurprising that courts have repeatedly held that skip tracing companies like PKW that locate vehicles are not debt collectors for purposes of the FDCPA, except with respect to 15 U.S.C. § 1692f(6).

In *Campbell v. Triad Financial Corporation*, the Northern District of Ohio considered a summary judgment motion seeking dismissal of FDCPA claims brought against a series of defendants, several of which challenged that they were not "debt collectors" under the statute. 2007 WL 2973598, at *9 (N.D. Ohio Oct. 9, 2007). The Court reviewed the FDCPA's definition of "debt collector" under 15 U.S.C. § 1692a(6) and noted that plaintiffs in FDCPA actions bear "the burden of proving the defendant's debt collector status." *Id.* (citing *Goldstein v. Hutton, Ingram, Yusek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60 (2d Cir. 2004)). The Court then concluded, as a matter of law, that a skip tracer is not a "debt collector" under the FDCPA. "As skip tracers merely locate property and do not collect debts, they are not debt collectors within the meaning of the FDCPA." 2007 WL 2973598, at *9.

9

District courts around the country have repeatedly followed the same logic. *Goldstein v. Chrysler Fin. Co., LLC*, 276 F. Supp. 2d 687, 690 (E.D. Mich. 2003) ("LAI is a skip tracing firm hired to locate property, in this case the car. Therefore it does not fall within the definition of debt collector set forth by 15 U.S.C. § 1692 a(6). Their principal purpose is not to collect debts, nor do they regularly collect or attempt to collect debts owed due to them or others."); *Baker v. Trans Union LLC*, 2010 WL 2104622, at *9 (D. Ariz. May 25, 2010) ("As a skip-tracer, Verifacts is not engaged in a business the principal purpose of which is the collection of debt because it merely gathers location information for use by the collections industry. It has no direct interest in the debt to be collected. Therefore, Verifacts is not a 'debt collector' under the first prong of the definition."); *DeMaestri v. VeriFacts Inc.*, 2012 WL 1192758, at *8 (D. Colo. Mar. 16, 2012), *report and recommendation adopted*, 2012 WL 1192034 (D. Colo. Apr. 10, 2012) (granting summary judgment to skip tracing company because its principal purpose was not the collection of debts and the FDCPA therefore did not apply).

The Locate Company Agreement reflects exactly what services PKW was hired to perform. It was retained as a skip tracer to locate and coordinate repossession of vehicles. It was specifically prohibited from attempting to collect any debt and did not attempt to collect any debt in any phone call referenced in the Amended Complaint. (Scott Decl. Ex 1 at 1–2; Peterson Decl. Exs. A, B.) Under well-established precedent, Carlson cannot meet the burden of establishing that PKW is a debt collector. The Amended Complaint fails as a matter of law.

### D. Carlson's Legally Incoherent And Conclusory Pleading That PKW Is A Debt Collector Does Not Bar The Granting Of A Motion To Dismiss.

1. *Obduskey* does not say what Carlson attempts to claim.

Carlson's first argument is a direct misreading of the Supreme Court's decision in *Obduskey*. Carlson claims that, "Defendant PKW is a debt collector and is subject to provisions

10

of the FDCPA other than section 1692f for Defendant PKW engaged in conduct other than that required by state law to enforce the security interest at issue." (Am. Compl. ¶ 5) (citing *Obduskey*.)

Carlson appears to believe that the *Obduskey* decision dramatically changed the law by making all conduct undertaken by companies that enforce security interests subject to the FDCPA *except* where state law mandates that the action be taken. Nothing in the actual language of the Supreme Court's decision supports that reading. Instead, it states that, "[F]or the reasons we have given, we believe that the statute exempts entities engaged in no more than the 'enforcement of security interests' from the lion's share of its prohibitions. And we must enforce the statute that Congress enacted." *Obduskey*, 139 S.Ct. at 1040.

Notably, the *amicus* brief filed by the Consumer Financial Protection Bureau anticipated that an attorney would someday make Carlson's misguided argument:

> Although not implicated here, actions that are clearly incidental to the enforcement of a security interest also would not constitute debt collection (unless they involve an effort to obtain repayment of the debt) regardless of whether state law strictly requires them. For example, state law might not require a repossession agent to send a consumer a notice of the specific time the agent will repossess property, but the agent might do so as a courtesy to the consumer. There is no basis to conclude that Congress intended to regulate that type of purely informational communication as debt collection.

Brief of United States as Amicus Curiae, p. 19, n.4, *Obduskey v. McCarthy & Holthus LLP*, 139 S.Ct. 1029 (2019).

Carlson's claim that *Obduskey* brings nearly all enforcement of security interests within the scope of the FDCPA is contradicted by the actual language of that decision, contradicted by the language of the FDCPA itself, and the notion was rejected even by the federal agency charged with protecting the rights of consumers. *Obduskey* is, instead, consistent with a long line of cases around the country holding that skip tracers, repossessors, and others who enforce

11

security interests are not "debt collectors" under the FDCPA and cannot be sued under it, except with respect to 15 U.S.C. § 1692f(6).

### 2. Carlson cannot defeat a motion to dismiss by summarily pleading the elements without factual support.

Carlson's other strategy to attempt to stave off dismissal is to plead the conclusion that PKW is a debt collector by asserting, without any factual support, that the legal standard is met. (Am. Compl. ¶ 4.) Carlson does not identify any actual instance in which PKW has attempted to collect a debt from him or anyone else.

Mere "threadbare recitals" of the statutory standard to be considered a "debt collector" are insufficient to defeat a motion to dismiss. In *Estate of Egenious Coles v. Zucker, Goldberg & Ackerman* the Third Circuit affirmed the district court's granting of a motion to dismiss, finding that the plaintiff "alleges, in a conclusory fashion, that the law firm is a "debt collector" by quoting the relevant definition from the FDCPA. However, beyond this legal conclusion, the complaint provides no factual allegations that suggest Ballard Spahr regularly collects or attempts to collect debts owed to another." 658 F. App'x 108, 111 (3d Cir. 2016). *See also, e.g., Green v. Specialized Loan Servicing*, LLC, No. 15-CV-513-JDP, 2016 WL 3963255, at *5 (W.D. Wis. July 21, 2016):

> To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Greens' claim is plausible if they "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (internal citations and quotation marks omitted).

Here, Carlson has done nothing more than assert the conclusion that PKW meets the factual standard to be considered a debt collector.[1] The Amended Complaint contains no allegations of any actual debt collection activity undertaken by PKW and both the phone calls and the Locate Company Agreement reflect that PKW does not engage in debt collection activities.

The Amended Complaint cannot be saved by its conclusory, unsupported allegations. It fails as a matter of law and should be dismissed.

### III. CARLSON'S CLAIM IS FACTUALLY UNSUPPORTED AND LEGALLY MERITLESS EVEN IF AN FDCPA CLAIM COULD BE ASSERTED.

The FDCPA claim fails as a matter of law because PKW is not a "debt collector." Nevertheless, when each of the different statutes referenced in the Amended Complaint is considered, it becomes apparent that even if PKW *was* regulated by the FDCPA, the Amended Complaint would still fail as a matter of law because PKW's actions have at all times been consistent with the statute.

#### A. PKW Is Using Its True Name.

The Amended Complaint accuses PKW's representative of misrepresenting the identity of his employer, using a "fictitious" name, and, as a result, violating 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692e(14). Carlson purports to assert claims on behalf of a large class of consumers who have been victimized by PKW's misrepresentation of its identity.

---

[1] The Amended Complaint also notes that under the Locate Company Agreement, PKW is compensated when a vehicle is repossessed or when FMCC receives certain payments. (Am. Compl. ¶ 6.) This fact is irrelevant. The FDCPA defines "debt collectors" based on their actions. Nothing in the FDCPA provides that companies that enforce security interests become "debt collectors" as a consequence of the way that they are paid.

Had Carlson or his attorneys devoted even 60 seconds to an internet search before filing the Amended Complaint, they would have seen that their allegations are factually and legally meritless. More than five years ago, PKW publicly registered "SB Investigations" as a fictitious name. (Scott Decl. ¶ 3, Ex. 2.) If one simply types "SB Investigations" into the Fictitious Business Search for El Dorado County[2] this information is publicly available and readily accessible. Under both the plain language of the FDCPA and Federal Trade Commission guidance, a company's use of a registered fictitious name complies with the FDCPA:

> A debt collector may use a name that does not misrepresent his identity or deceive the consumer. Thus, a collector may use its full business name, the name under which it usually transacts business, or a commonly-used acronym. When the collector uses multiple names in its various affairs, it does not violate this subsection if it consistently uses the same name when dealing with a particular consumer.

FTC Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,107 (Dec. 13, 1988).

PKW used its actual, publicly filed and disclosed business name "SB Investigations." By using that name, PKW would have been in compliance with the FDCPA even if it was a debt collector. Carlson's allegations are demonstrably false and never should have been made.

### B. No FDCPA Violation Arises Because A Phone Agent Uses A Different Last Name Than His Own.

Carlson also attempts to construct class action claims by alleging that PKW representative Sean Sasville used a different name—"Sean Michaels"—during phone calls. (Am. Compl. ¶ 36.)

---

[2]http://www.criis.com/cgi-bin/fbn_search.cgi?COUNTY=eldorado&YEARSEGMENT=current&TAB=1 (accessed 4/25/19).

14

Cases from around the country and guidance from the Federal Trade Commission provide that no violation of the FDCPA occurs just because an agent makes phone calls using a last name that is different than his own.

> Individual employees of debt collectors may use "desk names" or aliases in order to protect their personal identities. The FTC states with regard to this matter that "an individual debt collector may use an alias if it is used consistently and if it does not interfere with another party's ability to identify him (e.g. the true identity can be ascertained by the employer. [citing 53 Fed. Reg. 50,103]; *see also Youngblood v. GC Servs. Ltd. P'ship*, 186 F. Supp. 2d 695, 700 (W.D. Tex. 2002) ("The use of a professional name or desk name is not uncommon. Neither is it misleading so long as it refers to a particular person.")

*Thomas v. Consumer Adjustment Co., Inc.*, 579 F. Sup. 2d 1290, 1294 (E.D. Mo. 2008).

The Amended Complaint acknowledges that PKW's representative consistently used the same name when speaking to both Carlson and his son. (Am. Compl. ¶¶ 33, 38.) The Amended Complaint does not allege that any person was misled or injured by the use of the last name "Michaels." There is no legal basis for Carlson to pursue class action claims on the basis that PKW's representative used a last name different than his own.

## C. **Carlson Consented To Third Party Contact.**

Carlson claims that PKW violated 15 U.S.C. § 1692c(b) by communicating with his son, Anthony. But even if PKW actually was a debt collector, its conduct would have complied with the FDCPA because Carlson explicitly provided consent for PKW to contact family members before the call with his son Anthony occurred.

The recorded phone call demonstrates that PKW's representative brought up family members only after Carlson claimed, "The vehicle is not even in the country," and then refused to answer the question, "[W]here'd did you ship it off to?" (Peterson Decl. Ex. A.) Carlson next refused to provide a location, stating, "You're not getting it. Okay?" (Peterson Decl. Ex. A.) In response, the representative expressed hope that family members could inform him where the

15

truck was located and said nothing about revealing Carlson's failure to make payments, or any other detail of his indebtedness, to third parties. (Peterson Decl. Ex. A.) Carlson reacted to this possibility by twice providing permission for third parties to be contacted, stating, "Yeah, do that. Do that. You know, just be real careful about how you do it. . . . Hey, you know what, give them a call. Find out. Just be careful what you say. Cause I'll sue the shit of you, too." (Peterson Decl. Ex. A.)

The recorded phone call establishes that Carlson provided consent to third-party contact. To be sure, he did so in the hope that PKW's agent would say something wrong that would allow him to "sue the shit out of" PKW, but he provided consent nonetheless. Even if PKW was a debt collector, no violation of 15 U.S.C. § 1692c(b) would have occurred.

### D. Nothing Inappropriate Was Said To Carlson Or His Son.

Carlson claims that PKW violated 15 U.S.C. §§ 1692d, 1692e, 1692e(5), and 1692f, as a result of: (1) threatening to disclose—and then actually disclosing—the "existence of and possible details concerning Plaintiff's alleged debt" to Carlson's family members; and (2) offering Carlson's son Anthony compensation to assist in "efforts to aid in the collection of the debt and/or to repossess Plaintiff's Vehicle." (Am. Compl. ¶¶ 100-101.)

These allegations are fabricated. Carlson and his counsel have the recorded phone calls and transcripts in their possession from the original motion to dismiss. (Peterson Decl. Exs. A, B.) They can see and hear exactly what PKW's representative said. Nothing that was said violated the law.

The Amended Complaint attempts to manufacture an FDCPA violation by claiming that PKW's representative "made a thinly veiled threat to disclose the existence of and possible details concerning Plaintiff's alleged debt to FMCC to Plaintiff's family members." (Am. Compl. ¶ 100.) The Court need only review the transcript and recorded phone call with Carlson

16

to see that no such threat was actually made. PKW's representative said absolutely nothing about disclosing the existence of a debt to anyone. (Peterson Decl. Ex. A.)

Furthermore, PKW's represenative said nothing about a debt when he spoke with Anthony. When he answered the phone, Anthony denied even knowing who Carlson (his father) was. (Peterson Decl. Ex. B.) The PKW representative said nothing about repossession or any debt owed, instead responding, "Okay. No worries because I was definitely going to see if you knew them and offer you some money if you could help me locate a vehicle." (Peterson Decl. Ex. B.)

Under the circumstances—because Anthony had just lied and denied knowing his own father—no actual offer of money for help in locating the vehicle was made. Even if it had been, no provision of the FDCPA prohibits offering money for assistance in locating secured collateral.

### E. The Attempt To Plead A Violation Of 15 U.S.C. § 1692b Fails.

Carlson alleges that PKW has violated 15 U.S.C. § 1692b, which regulates the acquisition of location information. (Am. Compl. ¶¶ 22-23.) Carlson specifically alleges that because PKW's agent volunteered the name of his employer, a violation of 15 U.S.C. § 1692b(1) occurred. (Am. Compl. ¶ 46.)

This claim ignores the statutory language and is meritless. By its terms, 15 U.S.C. § 1692b applies only when a "debt collector" is "communicating with any person other than the consumer for the purpose of acquiring location information about the consumer." The term "location information" is defined in 15 U.S.C. § 1692a to mean "a consumer's place of abode and his telephone number at such place, or his place of employment."

At no point during the phone call with Carlson's son did PKW's agent ask for any telephone numbers or address information for Carlson. (Peterson Decl. Ex. B.) The Amended Complaint cannot and does not allege otherwise. Instead, PKW's representative was trying to

17

locate the vehicle. Under its plain language, the location of a vehicle is not "location information" and 15 U.S.C. § 1692b does not apply. Even setting aside the fact that PKW is not a debt collector, the claim fails as a matter of law.[3]

## CONCLUSION

Carlson's stated intention was to "sue the shit out of" the company that was trying to locate his truck. This he has done, despite the fact that the case lacks either factual or legal merit. This case should never have been filed and should have been dismissed immediately once its lack of merit was made known. For whatever reason, Carlson and his counsel have instead chosen to file two complaints filled with meritless accusations that cannot stand up to factual or legal scrutiny.

No matter how many times Carlson and his counsel might be permitted to attempt to re-plead, they will never be able to establish that PKW is a debt collector or that the phone calls referenced in the Amended Complaint violated Carlson's rights. This case should be dismissed with prejudice and PKW should be awarded its attorney's fees and costs incurred in connection with defending it.

---

[3] For the same reasons, Carlson's claim that PKW violated another portion of the location information statute, 15 U.S.C. § 1692b(2), also fails. (Am. Compl. ¶¶101.)

Date: May 1, 2019  **FOX ROTHSCHILD LLP**

By: /s/ Aaron Mills Scott
    Aaron Mills Scott (MN ID #33943X)

Campbell Mithun Tower – Suite 2000
222 South Ninth Street
Minneapolis, Minnesota 55402-3338
Telephone: (612) 607-7000
Facsimile: (612) 607-7100
Email: ascott@foxrothschild.com

**ATTORNEYS FOR DEFENDANT PATRICK K. WILLIS COMPANY, INC.**